IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Edwin J. Trevillyan and Christine M. Trevillyan, individually and on behalf of others similarly situated,  )<br>)<br>) | C/A No. 2:10-1387-MBS |
| Plaintiffs,  ) | |
| vs.  )<br>) | **OPINION AND ORDER** |
| APX Alarm Security Systems, Inc. a/k/a APX Alarm Security Solutions, Inc.; Apex Alarm, LLC; Security Associates International, Inc. A/k/a SAI; CastleRock Security, Inc.; and Anderson, Crenshaw & Associates, LLC,  )<br>)<br>)<br>)<br>)<br>) | |
| Defendants.  ) | |

Plaintiffs Edwin Trevillyan and Christine Trevillyan ("Plaintiffs") filed the within action on May 28, 2010 against APX Alarm Security Systems, Inc. a/k/a APX Alarm Security Solutions, Inc. (APX); Apex Alarm, LLC; Security Associates International, Inc. a/k/a SAI ("SAI"); CastleRock Security, Inc. ("CastleRock"); (herein collectively "Defendants") and Anderson, Crenshaw & Associates, LLC ("Anderson"). Plaintiffs allege that they entered into an Alarm System Purchase and Services Agreement dated May 29, 2007 (the "Agreement"), but that the security system was not monitored properly; that monthly sums due under the Agreement were improperly debited from Plaintiffs' bank account; that Plaintiffs were forced to terminate the Agreement because the security system was not moved to a new location as promised; that they were forced to pay penalties for terminating the Agreement and nevertheless continued to be billed; that their account was turned over for collection and they received harassing telephone calls and harm to their credit rating.

Plaintiffs currently allege the following causes of action: negligent misrepresentation against APX (First Cause of Action); negligence against APX and SAI (Second Cause of Action); breach of contract against SAI (Third Cause of Action); breach of express and implied warranties against APX, SAI, and CastleRock (Fourth Cause of Action); fraud against APX (Fifth Cause of Action); conversion against APX, SAI, and CastleRock (Sixth Cause of Action); unjust enrichment against APX, SAI, and CastleRock (Seventh Cause of Action); violation of S.C. Code Ann. § 36-2-718 of the South Carolina Uniform Commercial Code ("UCC") against APX, SAI, and CastleRock (Eighth Cause of Action); violation of the Fair Debt Collection Practices Act against Anderson (Ninth Cause of Action); and injunctive and declaratory relief (Tenth Cause of Action).[1]

This matter is before the court on motion to dismiss filed by CastleRock on June 30, 2010. Plaintiffs filed a response in opposition on July 18, 2010, to which CastleRock filed a reply on July 29, 2010. This matter also is before the court on motion to dismiss filed by APX on July 27, 2010. Plaintiff filed a response in opposition on August 27, 2010, to which APX filed a reply on September 27, 2010. The court held a hearing on November 17, 2010.

## I. **FACTS**

The facts viewed in the light most favorable to Plaintiffs are as follows. On or about May 29, 2007 an APX representative solicited and sold to Plaintiffs an alarm system and monitoring service contract for $39.99 per month for thirty-six months. APX informed Plaintiffs that the alarm system could be relocated at no additional charge when Plaintiffs' current tenancy ended. Monthly payments were set up on an automatic debit from Plaintiffs' checking account on the 25th of each

---

[1] Plaintiffs have dismissed a number of causes of action against various Defendants (ECF Nos. 53, 59). Further, Apex Alarm, LLC was dismissed as a party on September 7, 2010 (ECF No. 51).

month. Pursuant to a Dealer Agreement between APX and SAI, APX sold Plaintiffs' alarm system monitoring account to SAI for servicing. Plaintiffs were not made aware that their account was sold to SAI.

Plaintiffs experienced numerous service problems and allege that either APX or SAI failed to monitor Plaintiffs' alarm system in accordance with industry standards. On October 9, 2007, APX or SAI debited Plaintiffs' checking account sixteen days prior to the scheduled debit date, which resulted in Plaintiffs' account being over-drafted and their incurring a bank service fee of $32.00. Plaintiffs contacted SAI on or about April 23, 2008 to schedule the relocation of the alarm system to a new home. SAI did not return Plaintiffs' call to schedule relocation before Plaintiffs moved. Plaintiffs removed the system and took it to their new home, where it sat inactive. On or about June 30, 2008, SAI sent Plaintiffs a letter requesting contact within ten days to schedule removal of the system from their prior residence. Plaintiffs responded on July 7, 2008 and indicated their desire to terminate the Agreement.

SAI became insolvent in 2008 and on or about July 7, 2008 substantially all of SAI's assets were purchased by SA Systems, LLC ("SA Systems") in a foreclosure sale. On July 15, 2008, Plaintiffs sent APX and SAI a letter terminating the Agreement. Plaintiffs received no response. SA Systems sold SAI's retail monitoring assets to CastleRock on November 26, 2008. Plaintiffs allege that CastleRock submitted their account to a collections company, Anderson. Plaintiffs alleges that Anderson representatives coerced them into providing a checking account number by which Anderson could withdraw payments to satisfy the debt allegedly owed by Plaintiffs under the Agreement. The same day, Plaintiffs revoked authorization via facsimile for Anderson to debit their bank account.

II.  DISCUSSION

A.   Rule 12(b)(1)

APX brings a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), which provides:

(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1)   lack of subject-matter jurisdiction . . . .

Plaintiffs have the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991)). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond*, 945 F.2d at 768).  The district court should grant the Rule 12(b)(1) motion to dismiss "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Richmond*, 945 F.2d at 768).

B.   APX's Motion to Dismiss Pursuant to Rule 12(b)(1) (ECF No. 33)

APX contends that the court lacks jurisdiction over the within action because Plaintiffs have failed to exhaust their state administrative remedies.  According to APX, Plaintiffs' recourse is to file a complaint with to the South Carolina Contractors Licensing Board, which has been established to administer the Alarm Systems Business Act, S.C. Code Ann. § 40-79-10 et seq. (the "Act").  The court disagrees.

As an initial matter, the court notes that the Board has taken the position that the Act does

4

not grant it authority to address contractual disputes such as the claims at issue in this case:

> As a licensing body, the Board has the authority to take disciplinary action against a licensee only by proving a violation of the licensing law governing the practice of general, mechanical, alarm, and fire sprinkler contractors. The Board cannot address contractual disputes, monetary disputes, cosmetic issues, or require a licensee to make repairs or monetary restitution. The Board does require a licensee to conform his/her practice to statutory standards of licensure, published building codes, and published construction standards and may discipline any licensee who fails to do so. Discipline may range from a reprimand, fine, or up to revocation of the license. Statutory standards are minimum requirements. Higher levels of performance can be enforced only by civil courts or binding arbitration when such arbitration is agreed to by the parties to a contract.

South Carolina Department of Labor, Licensing and Regulation website (found at http://www.llr.state.sc.us/pol/contractors/index.asp?file=complaint.htm on December 20, 2010).

An agency is entitled to interpret its own regulation and the agency's interpretation is "'controlling unless plainly erroneous or inconsistent with the regulation.'" *Kentuckians for Commonweath, Inc. v. Rivenburgh*, 317 F.3d 425, 439 (4th Cir. 2003) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In addition, any remedy that the Board might provide is "separate from and in addition to all other civil . . . remedies." S.C. Code Ann. § 40-79-100. Thus, it would appear that the Act does not require Plaintiffs to exhaust administrative remedies prior to bringing a civil action.

Statutory construction further supports Plaintiffs' position. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Hodges v. Rainey*, 533 S.E.2d 578, 581 (S.C. 2000) (citing *Charleston County Sch. Dist. v. State Budget and Control Bd.*, 437 S.E.2d 6 (1993)). Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Id.* (citing *In re Vincent J.*, 509 S.E.2d 261, 262 (S.C. 1998)).

The purpose of the Act is to protect the health, safety, and welfare of the public "through the

regulation of businesses and individuals[.]" S.C. Code Ann. § 40-79-10. The Act makes it unlawful for a person to practice in the alarm system business in South Carolina without being licensed. *Id.* § 40-79-30. Administrative penalties can be assessed, i.e., $500 for a first offense and in an amount to be determined by the Board for a second offense in a five year period. *Id.* § 40-79-100. If an entity fails to render service to a client as agreed between the parties, acts negligently or incompetently, or engages in a wrongful or fraudulent act in the alarm business resulting in injury, the Board can revoke the entity's license, require payment of a civil penalty of up to $5,000 for each violation, and impose a cease and desist order. *Id.* The court concludes that the plain meaning of the Act is to provide for the licensing and regulation of the alarm systems industry. The Act neither supersedes nor constitutes a prerequisite for civil liability. *Cf. Synnex Corp. v. ADT Security Services, Inc.*, 928 A.2d 37, 45 n.2 (N.J. 2007) (noting that New Jersey Electrical Contractors Licensing Act, which required alarm business companies to obtain licenses and to conduct business in conformity with applicable regulations, "deals solely with the circumstances under which an alarm company's license may be suspended or revoked for the unlawful or unprofessional conduct of one of its employees, and not with issues of civil liability, which continue to be governed by common law").

The court finds that the Act does not mandate the exhaustion of administrative remedies. The court possesses subject matter jurisdiction over the within action. APX's motion to dismiss is denied as to this issue.

C.    Rule 12(b)(6) Standard

CastleRock and APX move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides:

(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any

pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

. . .

(6) failure to state a claim upon which relief can be granted[.]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 556, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When analyzing a motion to dismiss under Rule 12(b)(6), a court first should "identify[] the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1950. Second, the court must "consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* The court must "accept[] all well-ple[ade]d facts as true and construe[] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the claim." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009). Legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pleaded facts for Rule 12(b)(6) purposes. *Id.* at 255. The facts alleged in the complaint "must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id.* at 256 (quoting *Twombley*, 550 U.S. at 570).

D.  CastleRock's Motion to Dismiss (ECF No. 21)

CastleRock seeks to dismiss the following causes of action as to CastleRock: negligence (Second Cause of Action); breach of express/implied warranties (Fourth Cause of Action);

conversion (Sixth Cause of Action); unjust enrichment (Seventh Cause of Action), and violation of S.C. Code Ann. § 36-2-718 (Eighth Cause of Action). Plaintiffs stipulate to the dismissal without prejudice of the Second Cause of Action. Pls.' Opp'n to Def. CastleRock's Partial Mot. to Dismiss 2 (ECF No. 29). The court turns to the remaining causes of action for breach of warranties, conversion, unjust enrichment, and violation of S.C. Code Ann. § 36-2-718.

    1.    <u>Breach of Express/Implied Warranties (Fourth Cause of Action) and Section 36-2-718 (Eighth Cause of Action)</u>. In their Fourth Cause of Action, Plaintiffs allege that Defendants expressly and impliedly warranted that the alarm system would be installed and monitored in a careful, diligent, and workmanlike manner. Compl. ¶ 80, ECF 1. According to Plaintiffs, certain warranties were implied by law, including implied warranties of workmanlike construction, fitness, merchantability, and habitability, *id.* ¶ 82, as well as warranties arising under the UCC, i.e., S.C. Code Ann. §§ 36-2-314 (implied warranty of merchantability) and 36-2-315 (implied warranty of fitness for a particular purpose), Comp. ¶ 85. In their Eighth Cause of Action, Plaintiffs allege that a termination fee collected by CastleRock under the Agreement also violates the UCC, specifically S.C. Code Ann. § 36-2-718, which provides that "[a] term fixing unreasonably large liquidated damages is void as a penalty."

CastleRock argues that Plaintiffs cannot maintain the Fourth and Eighth Causes of action because these sections of the UCC–specifically sections 36-2-314, 36-2-315, and 36-2-718–apply only to causes of action arising out of the sales of goods. *See* S.C. Code Ann. § 36-2-102. CastleRock asserts that the Agreement is a contract for services and not goods.

The UCC defines "goods" in part as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which

the price is to be paid, investment securities . . . and things in action." S.C. Code Ann. § 36-2-105. In this case, the Agreement both provides for the purchase of alarm equipment, which would qualify as "goods" under the UCC, as well as certain services, including monitoring of the alarm system and notification to appropriate authorities in the event of an emergency. Thus, the Agreement is a hybrid goods and services contract. Whether a particular transaction is governed by the UCC depends on the predominant purpose of the transaction. *RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 855 (4th Cir. 2003) (citing *Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828, 832-33 (4th Cir.1998)). The court must evaluate the Agreement to determine whether its "'predominant factor, [its] thrust, [its] purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved . . . .'" *United States v. S. Contracting of Charleston, Inc.*, 862 F. Supp. 107, 109 (D.S.C. 1994) (quoting *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)). Three factors are helpful in determining the primary purpose of a contract: (1) the language of the contract; (2) the nature of the business of the supplier; and (3) the intrinsic worth of the materials involved. *RMS Tech.*, 64 F. App'x at 855 (citing *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 778 F.2d 196, 197 (4th Cir. 1985)).

The Agreement is entitled "Alarm System Purchase and Services Agreement." Entry 29-1 at 2. Under the section entitled "Installation and Services," APX agreed to "install the security system(s) . . . described on the Schedule of Protection ("SOP") . . . and provide repair service, and monitor the alarm system(s) . . . ." *Id.* The SOP lists a retail price of alarm system equipment of $1,200.00 and an installation charge of $200.00; however, installation and equipment charges were waived. Entry 29-2 at 2; Entry 29-1 at 2. The Agreement required Plaintiff to pay a one-time $99.00 activation fee, and a monthly "monitoring fee" of $39.99. The language of the Agreement weighs

in favor of a finding that the predominant purpose of contract was one for services.

The facts suggest APX was in the business of installing alarm systems for the purpose of monitoring the premises of its customers and notifying the appropriate authorities when an alarm is activated. APX solicited Plaintiffs for the purchase of alarm system monitoring services. The alarm system equipment was merely the means by which the monitoring would be effectuated. There is no foundation in the record for a finding that Plaintiffs' intent was to have an alarm system installed at their residence that had no connection with a monitoring service. In addition, Plaintiffs' chief complaint is that the monitoring service they contracted for was not performed and they "no longer feel comfortable using APX as a safety measure for our security." Compl., ¶ 41, ECF No. 1.

The intrinsic worth of the materials involved is nominal. The court concludes that the predominant purpose of the Agreement is the provision of services. The UCC does not govern the Agreement. CastleRock's motion to dismiss the Fourth and Eighth Causes of Action is granted.

2.      Conversion (Sixth Cause of Action). Plaintiffs contend that "[o]ne or more of the Defendants converted money of the Plaintiffs to [their] own use when [they] extorted or attempted to extort money from Plaintiffs by unlawful use of collection agencies and when [they] unlawfully debited Plaintiffs' accounts for monthly service prior to the authorized withdrawal date." Comp. ¶ 100, ECF No. 1. "Conversion" is defined as "the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Moseley v. Oswalds*, 656 S.E.2d 380, 381 (S.C. 2008) (citing *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 792 (S.C. 1990)). Money may be the subject of conversion when it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified. *Moore v. Weinberg*, 681 S.E.2d 875, 878 (S.C. 2009)

(citing *SSI Med. Servs.*, 392 S.E.2d at 792. Conversion is a wrongful act and cannot arise from the exercise of a legal right. *Owens v. Zippy Mart of S.C., Inc.*, 234 S.E.2d 217, 218-19 (S.C. 1977) (citing cases). Conversion consists of conduct more onerous than a simple breach of contract. *Id.* at 218.

CastleRock argues that Plaintiffs cannot maintain a tort action for conversion because CastleRock's duties to Plaintiffs arise solely from the Agreement. According to CastleRock, the gravamen of Plaintiffs' complaint is that CastleRock improperly accepted or pursued payments from Plaintiffs even though CastleRock failed to abide by its obligations under the Agreement. Thus, according to CastleRock, Plaintiffs' allegations amount to no more than a mere breach of contract claim. The court disagrees.

Plaintiffs' claim for conversion arises out of CastleRock's unlawful use of a collection agency and unlawful debiting of their bank account prior to authorization. Plaintiffs contend that parties to a contract have a separate and independent duty not to convert property or money of the other irrespective of their written agreement. At this stage of the proceedings, the court cannot say that Plaintiffs fail to state a plausible claim upon which relief could be granted. CastleRock's motion to dismiss is denied as to the Sixth Cause of Action for conversion.

3. <u>Quantum Meruit / Unjust Enrichment / Money Had and Received (Seventh Cause of Action)</u>. In their Seventh Cause of Action, Plaintiffs assert that CastleRock wrongfully charged and took funds from Plaintiffs and have been unjustly enriched. Comp. ¶ 104. Plaintiffs allege that Defendants' attempts to hold Plaintiffs liable "for services not properly installed and/or monitored and profiting from the unlawful cancellation fees, relocation fees, automatic renewal fees and month service fees is inequitable." *Id.* ¶ 107.

Quantum meruit is an equitable doctrine that allows recovery for unjust enrichment. *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994) (citing *Player v. Chandler*, 382 S.E.2d 891 (1989)). Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value. *Id.* (citing cases).

CastleRock asserts that Plaintiffs cannot maintain an action for unjust enrichment because the Agreement governs the relationship between CastleRock and Plaintiffs. Plaintiffs submit that unjust enrichment is pleaded in the complaint in the alternative to the breach of contract action. A plaintiff may plead in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2). Further, "[u]nder South Carolina law, 'when an identical set of facts entitle the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both; however, the plaintiff may not recover both.'" *Enhance-It, L.L.C. v. Am. Access Tech., Inc.*, 413 F. Supp. 2d 626, 632 (D.S.C. 2006) (quoting *Minyard Enter., Inc. v. Se. Chemical & Solvent Co.*, 184 F.3d 373, 381 (4th Cir.1999)). Generally, a party is not required to make an election of remedies until after the verdict is entered and prior to the entry of judgment. *Id.* (citing *Minyard Enter.*, 184 F.3d at 381). CastleRock's motion to dismiss is denied as to this issue.

E.     APX's Motion to Dismiss (Entry 33)

APX seeks to dismiss the following causes of action as to APX: negligent misrepresentation (First Cause of Action); negligence (Second Cause of Action); breach of contract (Third Cause of Action); breach of express/implied warranties (Fourth Cause of Action); fraud (Fifth Cause of

12

Action); conversion (Sixth Cause of Action); unjust enrichment (Seventh Cause of Action); violation of S.C. Code Ann. § 36-2-718 (Eighth Cause of Action); and injunctive and declaratory relief (Ninth Cause of Action). On September 7, 2010, the court granted APX's consent motion to dismiss the breach of contract claim against APX. ECF Nos. 48, 53. Accordingly, the court turns to APX's motion to dismiss Plaintiffs' claims for negligent misrepresentation, negligence, breach of warranties, fraud, conversion, unjust enrichment, violation of S.C. Code § 36-2-718, and injunctive and declaratory relief.

    1.    <u>Negligent Misrepresentation (First Cause of Action), Negligence (Second Cause of Action), Fraud (Fifth Cause of Action), and Conversion (Sixth Cause of Action)</u>. APX asserts that the South Carolina economic loss rule bars Plaintiffs' tort claims. The economic loss rule

> is a creation of the modern law of products liability. Under the rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself. In other words, tort liability only lies where there is damage done to other property or personal injury.
>
> The purpose of the economic loss rule is to define the line between recovery in tort and recovery in contract. Contract law seeks to protect the expectancy interests of the parties. Tort law, on the other hand, seeks to protect safety interests and is rooted in the concept of protecting society as a whole from physical harm to person or property. In the context of products liability law, when a defective product only damages itself, the only concrete and measurable damages are the diminution in the value of the product, cost of repair, and consequential damages resulting from the product's failure. Stated differently, the consumer has only suffered an economic loss. The consumer has purchased an inferior product, his expectations have not been met, and he has lost the benefit of the bargain. In this instance, however, the risk of product failure has already been allocated pursuant to the terms of the agreement between the parties. On the other hand, the parties have not bargained for the situation in which a defective product creates an unreasonable risk of harm and causes personal injury or property damage. Accordingly, where a product damages only itself, tort law provides no remedy and the action lies in contract; but when personal injury or other property damage occurs, a tort remedy may be appropriate.

*Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009).

13

The question of whether a plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty plaintiff claims the defendant owed. *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995). A breach of a duty that arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. *Id.* A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action. *Id.* (citing *State Ports Auth. v. Booz-Allen*, 346 S.E.2d 324 (S.C. 1986)).

The court agrees with APX that Plaintiffs have failed to show any duty arising independent of the Agreement that would give rise to a negligence cause of action. Accordingly, APX's motion to dismiss is granted as to the Second Cause of Action.

With respect to fraud, a party induced to enter a contract by fraud may elect to sue in contract or in tort. *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 309 S.E.2d 763, 766 (S.C. Ct. App. 1983) (citing *Houston v. Gilbert*, 5 S.C.L. (3 Brev.) 63 (1812)). With respect to negligent misrepresentation, the recovery of damages may be predicated upon a negligently made false statement where the misrepresented facts induced the plaintiff to enter a contract or business transaction, and the plaintiff suffers either injury or loss as a consequence of relying upon the misrepresentation. *Evans v. Rite Aid Corp.*, 478 S.E.2d 846, 848 (S.C. 1996) (quoting *Gilliland v. Elmwood Prop.*. 391 S.E.2d 577, 580 (S.C. 1990)). In this case, Plaintiffs allege that APX made false representations that induced them to enter into the Agreement. Compl. ¶¶ 59, 89. The court finds that Plaintiffs have alleged plausible claims of fraud and negligent misrepresentation. APX's motion to dismiss is denied as to the First and Fifth Causes of Action.

The court denies APX's motion to dismiss Plaintiffs' conversion claim (Sixth Cause of

Action) for the reasons set forth hereinabove.

    2.    <u>Breach of Express and/or Implied Warranties (Fourth Cause of Action); Violation of S.C. Code Ann. § 36-2-718 (Eighth Cause of Action)</u>. The court has determined that the Agreement is one primarily for services and not goods. Plaintiffs' claims are grounded in Defendants' alleged failure to properly install and monitor the alarm system, which acts constitute services. Plaintiffs do not contend that the alarm system equipment itself was defective or unfit for use. Plaintiffs' allegations are not governed by the South Carolina UCC. For the reasons stated hereinabove, APX's motion to dismiss is granted as to Plaintiffs' Fourth and Eighth Causes of Action.[2]

    3.    <u>Quantum Meruit / Unjust Enrichment / Money Had and Received (Seventh Cause of Action)</u>. APX contends that Plaintiffs' equitable claim for unjust enrichment should be dismissed because the relationship of the parties is governed by an express contract. As discussed hereinabove, Plaintiffs are entitled to plead in the alternative. APX's motion to dismiss is denied as to the Seventh Cause of Action.

    4.    <u>Injunctive and Declaratory Relief (Tenth Cause of Action)</u>. Plaintiffs seek a declaration that they are not obligated to pay the applicable Defendants cancellation penalties or monthly service fees and that they have the right to terminate their Agreement. Compl. ¶ 119. Plaintiffs allege on behalf of the putative class members that they are entitled to injunctive relief to prevent the applicable Defendants from continuing to engage in the business practices complained of. *Id.* ¶ 120.

APX contends that the Tenth Cause of Action for declaratory judgment is improper because

---

[2] Because the court finds that the UCC does not apply to the Agreement, the court does not reach APX's arguments that (1) the Agreement contained an enforceable clause disclaiming all warranties or (2) section 36-2-718(1) does not create an independent cause of action.

Plaintiffs only wish to adjudicate past conduct and do not seek prospective relief. APX contends that the dealings between it and Plaintiffs were terminated nearly two years ago.

To the extent Plaintiffs are seeking a judgment that declares their rights regarding the cancellation penalties assessed by APX and that they are not obligated to pay these fees, declaratory judgment is not the proper means of obtaining relief. *See Rowley v. City of North Myrtle Beach*, 2009 WL 750406 (D.S.C. 2009) (holding that declaratory judgment is inappropriate solely to adjudicate past conduct or as a means to proclaim that one party is liable to another) (citing *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006)). APX's motion to dismiss is granted as to the Tenth Cause of Action. Plaintiffs are granted leave to seek declaratory and injunctive relief in the event that a class comprised of members entitled to prospective relief is certified.

### III. CONCLUSION

For the reasons stated, CastleRock's partial motion to dismiss (ECF No. 21) is granted in part and denied in part. Further, APX's motion to dismiss (ECF No. 33) is granted in part and denied in part.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

January 3, 2011.